IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SHARON ARMSTRONG                                        PLAINTIFF

            v.              Civil No. 06-4016

MICHAEL J. ASTRUE,[1] Commissioner
Social Security Administration                          DEFENDANT

## MEMORANDUM OPINION

Plaintiff Sharon Armstrong brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (the Act).  Both parties have filed appeal briefs and the matter is now ripe for review.  The Court, being well and sufficiently advised, finds and orders as follows with respect thereto:

### BACKGROUND

1.  Plaintiff protectively filed an application for SSI benefits on November 13, 2003, alleging that she became disabled in September 2003, due to pain in her back and legs.  (Tr. 48-49, 50, 54.)

2.  The ALJ, in a written decision dated October 28, 2005, found that plaintiff was not disabled, as she retained the

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

residual functional capacity to perform the full range of sedentary work. (Tr. 13-19.)

3.  Plaintiff appealed the ALJ's decision to the Appeals Council and submitted additional medical records. (Tr. 223-247.) Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied on February 14, 2006. (Tr. 5-7.) When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision.

**APPLICABLE LAW**

4.  Our review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's role is to determine whether the Commissioner's decision is supported by substantial evidence in the record as a whole. *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995). Substantial evidence means more than a mere scintilla of evidence, it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Oberst v. Shalala*, 2 F.3d 249, 250 (8th Cir. 1993). If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the Commissioner's decision. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Even if the Court would have

weighed the evidence differently, the Court must affirm the denial of benefits if there is enough evidence to support the other side. *Id.*

5.   To be eligible for SSI benefits, a claimant has the burden of establishing the existence of a disability under the Act. 42 U.S.C. § 423(a)(1)(D). To meet this burden, the claimant must show:

\*   that she has a medically determinable physical or mental impairment that has lasted, or can be expected to last, for at least one year;

\*   that she is unable to engage in any substantial gainful activity; and

\*   that this inability results from the impairment.

*See id.; see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).

6.   The Commissioner follows a familiar five-step process to determine whether a claimant is disabled:

(1)  whether the claimant has engaged in substantial gainful activity since filing her claim;

(2)  whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities;

(3)  whether the impairment meets or equals a presumptively disabling impairment listed in the regulations;

-3-

(4) whether the claimant has the residual functional capacity – that is, what she can do despite her limitations -- to perform her past relevant work; and

(5)  if the claimant cannot perform her past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and experience.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Pearsall*, 274 F.3d at 1217.

**PLAINTIFF'S SUBJECTIVE COMPLAINTS AND LIMITATIONS**

7.  At the administrative hearing conducted by the ALJ on March 30, 2005, plaintiff testified as follows:

*    that she was 41 years of age and had a tenth-grade education (Tr. 266);

*    that on September 3, 2003, her brother pushed her during an altercation, causing her to fall down and injure her back (Tr. 268);

*    that she has constant, severe pain in her lower back and left leg and cannot stand for long periods of time "or ... just [has] to sit down, or move around" (Tr. 269); and

*    that a specialist recommended surgery, but she decided not to have it because it could result in nerve damage or a worsening of her condition (Tr. 269).

8.   In a supplemental interview outline plaintiff completed when she applied for benefits, plaintiff described her activities as follows:

*   she is able to bathe and dress herself, but is not able to take care of her hair because when she "put[s] [her] hands up for a long time they start hurting" (Tr. 71);

*   she is able to do dishes, but is not able to do other household chores because her "back and legs start to bother" her (Tr. 71);

*   she is not able to shop or run errands because she cannot "pick up things or walk a lot" (Tr. 71);

*   she is not able to prepare meals (Tr. 72);

*   she drives - but, according to her testimony at the hearing, she is only able to drive short distances because her back starts hurting (Tr. 72, 274); and

*   she spends her time watching television and reading (Tr. 72).

**MEDICAL EVIDENCE**

9.   An MRI taken of plaintiff's back in October 2003 revealed:

> At L4-5 the disc maintains normal height. However, there is diffuse desiccation with moderate diffuse bulging and a small focal tear in the annulus fibrosis. The bulge is coupled with some mild facet arthropathy and allows for mild bilateral lateral recess stenosis. However, no evidence of disc herniation or spinal stenosis.... (Tr. 91.)

-5-

10.  Plaintiff's treating physician, Dr. Paul Pappas, ordered physical therapy and epidural steroid injections, but plaintiff reported that these treatments did not alleviate her pain, and she was referred to a neurosurgeon, Dr. J. Brett Dietze.

11.  In January 2004, Dr. Dietze recommended a L4-5 microdiscectomy on the right side.  (Tr. 140-41.)  However, as noted above, plaintiff declined to have the surgery due to the risks involved.

12.  In March 2004, Dr. Robert Redd, a non-examining stage-agency consultant, reviewed plaintiff's medical records and completed a residual functional capacity assessment indicating that he believed plaintiff was capable of performing the exertional demands of light work with only occasional stooping and crouching.  (Tr. 131-38.)

13.  In May 2004, plaintiff was evaluated at Dickson Orthopedic Centers.  Dr. Dickson opined that plaintiff's symptoms were not related to an acute herniated disk.  (Tr. 190.)

14.  In follow-up visits with Dr. Pappas, plaintiff declined any referral for surgery or "elsewhere," stating that she was awaiting a disability hearing and would like to "follow up" after it.  (Tr. 196, 199.)

15.  Dr. Pappas, at the request of Plaintiff's attorney, completed a form assessing plaintiff's ability to perform work-related activities as follows: she could lift/carry less than ten

pounds occasionally, she could stand/walk less than two hours in an eight-hour workday, and she could sit less than two hours in an eight-hour workday.  (Tr. 143-45.)

At the hearing before the ALJ, Dr. Pappas explained that his assessment was based largely on plaintiff's subjective complaints. When the ALJ asked whether he was qualified to complete a work-related activities report, Dr. Pappas responded: "I'll do it on a temporary basis.  But as far as any long-term, no I don't do disability evaluations... [G]enerally we'll do [it] on a month-to-month basis."  (Tr. 261-62.)

16.  In May 2005, Dr. Roshan Sharma reviewed plaintiff's medical records and performed a consultative examination.  Dr. Sharma found:

> Extremities - She has full range of motion in both upper and lower extremities....
>
> Examination of the Lower Back - Patient's range of motion could not be actually ascertained as she would not flex reporting that she has too much pain and flexed no more than 30 degrees.  Extension was 0....  She is able to tiptoe and heel walk and do a hop squat.  No leg length discrepancy and no muscle atrophy noted. Straight leg raise is 65 degrees in both lower extremities.  Patient reports significant pain in the lower back when performed on either lower extremity. Faber's test and Popliteal compression test is negative. Sitting straight leg raise is full[,] however, she starts complaining of pain at 60 degrees of sitting straight leg raise in either extremity.

(Tr. 204-05.)

17.  Dr. Sharma concluded that plaintiff had low back pain secondary to a disc protrusion at the L5 level.  In Dr. Sharma's

-7-

assessment, plaintiff's pain behaviors and inability to flex and extend did not correspond well to her medical condition. (Tr. 205.) Dr. Sharma opined that plaintiff was capable of the full range of sedentary work and a limited range of light work, as she could lift/carry up to ten pounds frequently; she could stand/walk up to six hours in an eight-hour workday; she had no limitations with regard to sitting; and she had only occasional postural and environmental limitations, none of which affected her ability to perform sedentary work. (Tr. 207-08.)

## DISCUSSION

18. The Court first addresses the ALJ's assessment of plaintiff's subjective complaints. The Court believes the ALJ adequately evaluated the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and concludes there is substantial evidence supporting the ALJ's determination that plaintiff's complaints were not fully credible.

(a) First of all, plaintiff's subjective complaints were not supported by the medical evidence.

* While an MRI revealed degenerative disc disease of plaintiff's lumbar spine, with a small annular tear and bulging at the L4-5 level, there was no evidence of an acute herniated disc.

* Dr. Redd, a non-examining state agency consultant, believed that plaintiff was capable of performing light work with only occasional stooping and crouching.

-8-

* Dr. Sharma, who performed a consultative examination of plaintiff, opined that plaintiff's pain behaviors did not correspond well to her medical condition. Dr. Sharma concluded that plaintiff was capable of performing the full range of sedentary work and a limited range of light work.

* At the request of plaintiff's attorney, Dr. Pappas, plaintiff's treating physician, completed a work-related activities form indicating that plaintiff was not capable of even sedentary work.

A treating physician's opinion is due "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2)). Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole. *Id.* at 1013. The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Id.*

The Court finds that the ALJ was justified in crediting Dr. Sharma's assessment over Dr. Pappas' assessment. First of all, the weight of the medical evidence supports Dr. Sharma's assessment. Further, Dr. Pappas' treatment notes never mentioned

any restrictions on plaintiff's activities. *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (ALJ did not err in discounting treating physician's medical source statement where limitations detailed in statement were never mentioned in physician's treatment records). Additionally, at the hearing before the ALJ, Dr. Pappas explained that his assessment was based largely on plaintiff's subjective complaints and that he generally assesses only temporary limitations and does not perform long-term disability evaluations.

(b)   The credibility of Plaintiff's subjective complaints is also diminished by the fact that plaintiff declined a referral for surgery or "elsewhere," stating that she did not wish to "follow up" until after her disability hearing. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (claimant's failure to take advantage of treating physician's offer to refer him to a specialist weighed against his credibility).

(c)   Finally, the ALJ found that plaintiff had no past relevant work experience and properly determined that plaintiff's poor work record undermined her credibility. *See Pearsall*, 274 F.3d at 1218 (a lack of work history may indicate a lack of motivation to work rather than a lack of ability).

(d)   Based on the foregoing, the Court concludes that the ALJ adequately evaluated and discounted plaintiff's subjective complaints.

-10-

19.  The  Court  next  addresses  the  ALJ's  assessment  of plaintiff's  residual  functional  capacity.   The  ALJ  found  that plaintiff retained the residual functional capacity to perform the full  range  of  sedentary  work.   The  Court  believes  the  evidence discussed above supports this determination.  If an ALJ finds, and the  record  supports  the  finding,  that  a  claimant  can  perform  the full  range  of  activities  in  a  work  category,  the  ALJ  may  refer  to the  Medical-Vocational  Guidelines  found  in  20  C.F.R.  Part  404, Subpart  P,  Appendix  2  (Grid)  in  making  the  ultimate  conclusion  of disability  or  non-disability.   *See Harris v. Shalala*,  45  F.3d 1190,  1194  (8th  Cir.  1995).   Given  the  Court's  finding  that substantial  evidence  supports  the  ALJ's  determination  that plaintiff  is  capable  of  the  full  range  of  sedentary  work,  the Court believes the ALJ properly relied on the Grid, eliminating the  need  for  expert  vocational  testimony,  in  concluding  that  given plaintiff's  age,  education,  work  experience,  and  capacity  for sedentary  work,  plaintiff  was  not  disabled.

**CONCLUSION**

20.  Based  on  the  foregoing,  a  separate  judgment  will  issue forthwith affirming the ALJ's decision denying plaintiff benefits and  dismissing  plaintiff's  case  with  prejudice.

IT IS SO ORDERED this 22nd day of March 2007.


/S/JIMM LARRY HENDREN
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE